1

2

3

4

5

6

7

8

9

10

**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| 11 NAGEEB KASSEM AND NORA KASSEM | ) **08-CV-00010 AWI-SMS** |
| 12 | ) |
| | ) **ORDER GRANTING** |
| 13 Plaintiffs, | ) **INDIVIDUAL AND OFFICIAL** |
| | ) **CAPACITY DEFENDANTS'** |
| 14 v. | ) **MOTIONS TO DISMISS** |
| | ) **PLAINTIFFS' THIRD THROUGH** |
| | ) **NINTH CLAIMS FOR RELIEF** |
| 15 JANET NAPOLITANO, et. al. | ) **FOR FAILURE TO STATE A** |
| | ) **CLAIM WITHOUT LEAVE TO** |
| 16 Defendants. | ) **AMEND** |
| | ) |

17                                          (Document Nos. 65 & 66)

18

19

20          This is an immigration case brought by plaintiffs Nageeb Kassem ("Nageeb") and his

21  wife Nora Kassem ("Nora"), collectively ("Plaintiffs").  Nora is a United States citizen by birth.

22  Nageeb seeks lawful permanent resident status.  Nora's approved Form I-130 petition ("I-130")

23  for an Alien Relative was revoked.  Immigration Judge Polly Webber ("Judge Webber")

24  pretermitted Nageeb's Form I-485 adjustment of status to lawful permanent resident application

25  ("I-485") based on Nora's I-130 revocation.  Nageeb and Nora seek judicial review of the I-130

26  revocation.

27          In the instant motion, Official Capacity Defendants, Janet Napolitano ("Napolitano"),

28  John P. Torres ("Torres"), Michael Aytes ("Aytes"), Susan Curda ("Curda"), Don Riding

("Riding"), Timothy Aitken ("Aitken"), Ronald LeFevre ("LeFevre"), Eric Holder ("Holder"), Chief Judge Thomas Snow ("Chief Judge Snow"), and Judge Webber seek to dismiss Plaintiffs' third through eighth claims for relief based on lack of subject matter jurisdiction under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6).

Individual Capacity Defendants, Michael Chertoff ("Chertoff"), Jonathan Scharfen ("Scharfen"), Curda, Riding, and LeFevre seek to dismiss Plaintiffs' ninth claim for relief based on lack of subject matter jurisdiction under Rule 12(b)(1), lack of personal jurisdiction under Rule 12(b)(2), and for failure to state a claim under Rule 12(b)(6).

For the reasons stated below, Official Capacity Defendants' and Individual Capacity Defendants' motions to dismiss Plaintiffs' third through ninth claims against them are granted without leave to amend.

## PROCEDURAL BACKGROUND

On December 31, 2007, Plaintiffs filed a complaint against the following defendants: Chertoff (Secretary for the Department of Homeland Security ("DHS")); Julie Myers ("Myers") (Assistant Secretary for DHS and Bureau of Immigration and Customs Enforcement ("ICE")); Scharfen (Assistant Secretary for DHS and Acting Director of the Bureau of Citizenship and Immigration Services ("USCIS"))[1]; Riding (USCIS's Fresno Field Office Director); LeFevre (ICE's San Francisco District Office Chief Legal Counsel); Nancy Alcantar ("Alcantar") (ICE's Fresno Field Office Director); Michael Mukasey ("Mukasey") (United States Attorney General); David L. Neal ("Chief Judge Neal") (Chief Judge of the Executive Office of Immigration Review ("EOIR"))[2]; and Judge Webber in their individual and official capacities, and DOES I-IV and DOES V-VIII.  Plaintiffs' complaint sought to require DHS to complete Nageeb's background investigation or to require the Department of Justice ("DOJ") to adjudicate his I-485.  On March

---

[1]USCIS is an agency within the Department of Homeland Security, that is responsible for the adjudication of immigrant visa petitions.

[2]EOIR is a unit of the Department of Justice.  Immigration Judges employed by the EOIR adjudicate removal cases.

12, 2008, Plaintiffs filed a first-amended complaint.  On May 13, 2008, Plaintiffs filed a second-amended complaint.

On July 17, 2008, Plaintiffs filed a third-amended and supplemented complaint for writs of mandamus, writs of prohibition, injunctive relief, and damages pursuant to Bivens v. Six Unknown Narcotics Agents, 403 U.S. 388 (1971) ("Bivens").  Plaintiffs' third-amended complaint sought to compel DHS and USCIS to rescind the revocation of Nora's previously approved I-130, and for EOIR to vacate the order pretermitting Nageeb's application for adjustment of status to that of a lawful permanent resident.

On March 27, 2009, the court granted Official Capacity Defendants' and Individual Capacity Defendants' motions to dismiss for lack of subject matter jurisdiction and failure to state a claim with leave to amend.

On May 1, 2009, Plaintiffs filed a fourth-amended complaint ("FAC") against Defendants Napolitano (in her capacity as Secretary for DHS); Torres (in his capacity as Assistant Secretary for Homeland Security for ICE); Aytes (in his capacity of Acting Deputy Director of USCIS); Curda (personally and in her capacity as Director of Sacramento District of USCIS); Riding (personally and in his capacity as Field Office Director for Fresno Field Office of USCIS); Aitken (in his capacity as Field Office Director, San Francisco District of ICE); LeFevre (personally and as Chief Legal Counsel, San Francisco District of ICE/USCIS); Holder (in his capacity as Attorney General and Secretary of DOJ); Snow (in his capacity as Acting Chief Judge of EOIR); Judge Webber (in her capacity as Administrative Law Judge with EOIR); Scharfen (personally as the former Assistant Secretary and Acting Director of the USCIS); Chertoff (personally as the former Secretary for the Department of Homeland Security); Does I through VII; and Does V-VIII.

The FAC alleges the following claims for relief: (1) injunctive relief under the APA, ordering the DHS and USCIS to cancel, rescind, or vacate the unlawful revocation of Nora's previously approved I-130 visa petition; (2) injunctive relief under the APA seeking cancellation

of the unconstitutional revocation of the I-130 petition; (3) a writ of mandamus because DHS and USCIS had a non-discretionary duty to rescind the revocation of the non-discretionary approval of the I-130 petition; (4) a writ of prohibition, prohibiting DHS, DOJ, ICE, and EOIR from enforcing the I-130 revocation; (5) a writ of mandamus ordering the completion of Nageeb's immigration clearance; (6) a writ of mandamus ordering the adjudication of entitlement to permanent residence status notwithstanding the failure to investigate Nageeb's background; (7) a writ of mandamus compelling Defendants to complete its adjudication based on an ultra vires grant of power to the DHS; (8) a writ of prohibition, injunctive relief to prevent EOIR from imposing obligations on Plaintiffs and to prevent EOIR from relying on Judge Webber's I-485 pretermission order; and (9) Bivens damages against the Individual Capacity Defendants for alleged constitutional rights violations.

On June 15, 2009, Official Capacity Defendants filed a partial motion to dismiss Plaintiffs' third through eighth claims for relief based on lack of subject matter jurisdiction and failure to state a claim.

On June 15, 2009, Individual Capacity Defendants filed a motion to dismiss the ninth claim for relief based on lack of subject matter jurisdiction, personal jurisdiction as to certain Individual Capacity Defendants, and failure to state a claim.

On June 20, 2009, Plaintiffs filed oppositions to the Official Capacity Defendants' and Individual Capacity Defendants' motions.

On July 27, 2009, Official Capacity Defendants and Individual Capacity Defendants filed reply briefs.

On July 29, 2009, the court issued an order vacating the hearing date of August 3, 2009, and took the matter under submission.

On July 30, 2009, Plaintiffs filed objections to the court's July 29, 2009 order.  On August 4, 2009, the Defendants filed a response to Plaintiffs' objections.  On August 4, 2009, the court issued an order addressing Plaintiffs' objections.  On August 17, 2009, Plaintiffs filed a

sur-reply to Defendants' motion to dismiss.  On September 2, 2009, the court issued an order addressing Plaintiffs' sur-reply.

### FACTUAL ALLEGATIONS[3]

This action concerns a dispute over Nora's I-130 revocation.

In June 1996, Nageeb filed an I-589 application for political asylum.  On February 27, 2002, EOIR denied Nageeb's asylum application and ordered him removed.  On or about June 9, 2003, Nora filed an I-130 application seeking to classify Nageeb as her husband and for a determination by the DHS that Nageeb was eligible to immigrate to the United States.  At the time the I-130 application was filed, Nageeb was in removal proceedings before EOIR.  On March 21, 2006, DHS approved Nora's I-130 application.

Nageeb filed an I-485 application for adjustment of status to that of a lawful permanent resident during the pendency of the removal proceedings.  In mid-March 2007, Federal Bureau of Investigation ("FBI") agents contended that Nageeb was not divorced from his ex-wife in Yemen.  Nageeb alleges that he was lawfully divorced from his ex-wife in Yemen.

On May 8, 2007, Judge Webber indicated that she was likely to grant Nageeb's I-485 adjustment of status application based on Nora's approved I-130 petition, subject to the completion of Nageeb's background check.  On May 8, 2007, Judge Webber continued Nageeb's I-485 case to August 14, 2007, for purposes of allowing DHS to complete Nageeb's background check.  On May 8, 2007, Judge Webber granted Nageeb's application for a waiver of a finding of inadmissability based on false statements that had been made in Nageeb's political asylum application.

On July 31, 2007, DHS requested a further continuance because they had not completed Nageeb's background check.  Judge Webber granted the DHS's request and set the hearing for January 8, 2008.  On January 7, 2008, Judge Webber issued a notice resetting the January 8, 2008

---

[3]The factual history is provided for background only and does not form the basis of the court's decision; the assertions contained herein are not necessarily taken as adjudged to be true. The legally relevant facts relied upon by the court are discussed within the analysis.

hearing date to April 22, 2008.  On or about January 31, 2008, Judge Webber issued an order requiring Nageeb to submit a statement of readiness showing that he had taken new fingerprints and had updated his medical exam.  Judge Webber's order required DHS to submit a statement of readiness on or before April 15, 2008, and, if the background check was not complete by then, a realistic estimate of when it would be complete.  On February 15, 2008, Nageeb filed an opposition to Judge Webber's order.

On March 25, 2008, DHS, by its unit USCIS, issued a notice of intent to revoke ("Notice of Intent") Nora's I-130 petition based on an alleged insufficiency of evidence of a valid divorce in Yemen.  Nageeb alleges that he had been divorced in Yemen and had reported that fact to USCIS prior to the approval of Nora's I-130 petition.

On March 27, 2008, DHS reported to EOIR that Nageeb's background check was still not complete, and that USCIS had issued a Notice of Intent and DHS asked for another continuance. Based on the DHS report, Judge Webber reset the April 22, 2008 hearing for August 26, 2008. On April 9, 2008, Nageeb responded to USCIS's Notice of Intent and produced a new document from the Yemeni government that he claims proves the validity of his divorce.

On April 30, 2008, DHS by USCIS issued a notice of revocation of Nora's I-130 ("Notice of Revocation") and revoked the I-130.  DHS and USCIS indicated that Nora could appeal the revocation decision to the Board of Immigration Appeals ("BIA").  Nora did not appeal the decision to the BIA.  Nora alleges that she could file a new I-130 petition for Nageeb but did not because Plaintiffs reasonably believe that DHS and USCIS would not act timely and adjudicate or find a pretext for denying it.

On June 5, 2008, DHS informed Judge Webber that Nageeb's background check had been completed.  On June 5, 2008, DHS informed Judge Webber of the I-130 revocation and requested that EOIR pretermit Nageeb's I-485 application.  DHS did not inform Judge Webber of any adverse findings arising from the background check.  On June 8, 2008, Nageeb filed an opposition to DHS's request for pretermission and submitted to Judge Webber that Nora's I-130

6

revocation was unlawful.

On June 17, 2008, Judge Webber pretermitted Nageeb's I-485 application on the grounds that he was ineligible to adjust his status as a result of the April 30, 2008 revocation of Nora's I-130 application.  On June 17, 2008, Judge Webber entered a removal order, which Nageeb timely appealed to the BIA.  The complaint alleges that, but for the refusal and failure of DHS to timely report, there was nothing in Nageeb's background that would render him inadmissable, Nageeb would have been able to enjoy permanent resident status before USCIS issued its Notice of Revocation.  Plaintiffs allege that Defendants unlawfully revoked Nora's I-130 petition.

**LEGAL STANDARD**

A.     <u>Subject Matter Jurisdiction</u>

Rule 12(b)(1) of the Federal Rules of Civil Procedure allows a motion to dismiss for lack of subject matter jurisdiction.  It is a fundamental precept that federal courts are courts of limited jurisdiction.  Limits upon federal jurisdiction must not be disregarded or evaded.  <u>Owen Equipment & Erection Co. v. Kroger</u>, 437 U.S. 365, 374 (1978).  The plaintiff has the burden to establish that subject matter jurisdiction is proper.  <u>Kokkonen v. Guardian Life Ins. Co.</u>, 511 U.S. 375, 377 (1994).  This burden, at the pleading stage, must be met by pleading sufficient allegations to show a proper basis for the court to assert subject matter jurisdiction over the action.  <u>McNutt v. General Motors Acceptance Corp.</u>, 298 U.S. 178, 189 (1936); Fed. R. Civ. P. 8(a)(1).  When a defendant challenges jurisdiction "facially," all material allegations in the complaint are assumed true, and the question for the court is whether the lack of federal jurisdiction appears from the face of the pleading itself.  <u>Thornhill Publishing Co. v. General Telephone Electronics</u>, 594 F.2d 730, 733 (9th Cir. 1979);  <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F. 2d 884, 891 (3d Cir.1977); <u>Cervantez v. Sullivan</u>, 719 F. Supp. 899, 903 (E.D. Cal.1989), <u>rev'd on other grounds</u>, 963 F. 2d 229 (9th Cir.1992).  A defendant may also attack the existence of subject matter jurisdiction apart from the pleadings.  <u>Mortensen</u>, 549 F. 2d at 891.

7

B.    Personal Jurisdiction

Rule 12(b)(2) allows a motion to dismiss for lack of jurisdiction over the defendant. When a defendant files a motion to dismiss based on lack of personal jurisdiction, a plaintiff must make a prima facie showing of personal jurisdiction to avoid dismissal.  Lake v. Lake, 817 F.2d 1416, 1420 (9th Cir.1987); Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir.1986).  In order to establish personal jurisdiction, a plaintiff must demonstrate both that the forum state's long-arm statute confers personal jurisdiction over out-of-state defendants, and that the exercise of jurisdiction does not violate federal due process.  Gray & Co. v. Firstenberg Machinery Co., 913 F. 2d 758, 760 (9th Cir. 1990).  Because California's long-arm statute permits personal jurisdiction to the extent allowed by due process, the existence of specific personal jurisdiction depends solely on the requirements of federal due process.  Cal. Civ. Pro. §410.10;  Haisten v. Grass Valley Medical Reimbursement Fund, Ltd., 784 F. 2d 1392, 1396 (9th Cir. 1986).

Basic due process for personal jurisdiction requires that a defendant has fair warning that a particular activity may subject him or her to jurisdiction.  Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).  The three-part test for determining whether or not specific jurisdiction may be exercised is as follows:  (1) "The nonresident defendant must do some act or consummate some transaction with the forum or perform some act by which he purposely avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws." Data Disc, Inc. v. Systems Technology Associates, Inc. 557 F.2d 1280, 1287.  However, purposeful availment may include a defendant "whose only 'contact' with the forum state is the 'purposeful direction' of a foreign act having effect in the forum state.  Moreover, jurisdiction may be exercised with a lesser showing of minimum contact than would otherwise be required if considerations of reasonableness dictate." Haisten, 784 F. 2d at 1397; (2) "The claim must be one which arises out of or results from the defendant's forum-related activities." Data Disc, Inc., 557 F. 2d 1280 at 1287; and ( 3)

8

"Exercise of jurisdiction must be reasonable." Id. at 1287.  However, "there is a presumption of reasonableness upon a showing that the defendant purposefully directed his activities at forum residents which the defendant bears the burden of overcoming by presenting a compelling case that jurisdiction would be unreasonable." Haisten, 784 F. 2d at 1397.

C.    Failure to State a Claim

Under Federal Rule of Civil Procedure 12(b)(6), a claim may be dismissed because of the plaintiff's "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) may be based on the lack of a cognizable legal theory or on the absence of sufficient facts alleged under a cognizable legal theory. Johnson v. Riverside Healthcare Sys., 534 F.3d 1116, 1121 (9th Cir. 2008); Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In reviewing a complaint under Rule 12(b)(6), all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. Marceau v. Blackfeet Hous. Auth., 540 F.3d 916, 919 (9th Cir. 2008); Vignolo v. Miller, 120 F.3d 1075, 1077 (9th Cir. 1999).  The Court must also assume that general allegations embrace the necessary, specific facts to support the claim. Smith v. Pacific Prop. and Dev. Corp., 358 F.3d 1097, 1106 (9th Cir. 2004); Peloza v. Capistrano Unified Sch. Dist., 37 F.3d 517, 521 (9th Cir. 1994).  But, the Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." In re Gilead Scis. Sec. Litig., 536 F.3d 1049, 1056-57 (9th Cir. 2008); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).  Although they may provide the framework of a complaint, legal conclusions are not accepted as true and "[t]hreadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009); see also Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).  Furthermore, Courts will not assume that plaintiffs "can prove facts which [they have] not alleged, or that the defendants have violated . . . laws in ways that have not been alleged." Associated General Contractors of California, Inc. v. California State Council of Carpenters, 459 U.S. 519, 526

9

(1983).  As the Supreme Court has recently explained:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Thus, to "avoid a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Iqbal, 129 S.Ct. at 1949; see Twombly, 550 U.S. at 570; see also Weber v. Department of Veterans Affairs, 521 F.3d 1061, 1065 (9th Cir. 2008).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court draw the reasonable inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S.Ct. at 1949.

> The plausibility standard is not akin to a 'probability requirement,' but it asks more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'
> . . .
>
> Determining whether a complaint states a plausible claim for relief will . . . be a context specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

Iqbal, 129 S.Ct. at 1949-50.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief."  Moss v. United States Secret Serv., 572 F.3d 962, 969 (9th Cir. 2009).

If a Rule 12(b)(6) motion to dismiss is granted, "[the] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc).  In other words, leave to amend need not be granted when

1    amendment would be futile.  Gompper v. VISX, Inc., 298 F.3d 893, 898 (9th Cir. 2002).

2                                        **DISCUSSION**

3    A.      Claims against Individual Capacity Defendants

4            Individual Capacity Defendants Chertoff, Curda, LeFevre, Riding, and Scharfen seek to

5    dismiss Plaintiffs' Bivens claim for lack of subject matter jurisdiction pursuant to Rule12(b)(1),

6    lack of personal jurisdiction under Rule 12(b)(2), and for failure to state a claim under Rule

7    12(b)(6).  Individual Capacity Defendants argue that this court should dismiss Plaintiffs' claim

8    for four reasons.  First, the Immigration and Nationality Act ("INA") strips this court of subject

9    matter jurisdiction.  Second, the INA is a special factor precluding Bivens damages.  Third,

10   Individual Capacity Defendants are entitled to qualified immunity, as there is no constitutional

11   violation.  Fourth, Plaintiffs' claims against Chertoff and Scharfen do not have the requisite

12   minimum contacts with California to establish this court's personal jurisdiction over them.

13           1.      Subject Matter Jurisdiction

14                   Defendants' Argument

15            Defendants argue that this court does not have jurisdiction because the INA divests this

16   court of subject matter jurisdiction to hear Plaintiffs' constitutional tort claims.  Plaintiffs' claims

17   are barred by 8 U.S.C. §§1252(b)(9) and 1252(g) because they relate to the actions of the

18   Individual Capacity Defendants taken for purposes of acting on Plaintiffs' immigration and

19   removal proceedings.

20                   Discussion

21            Plaintiffs contend this court has subject matter jurisdiction over their ninth claim for relief

22   pursuant to Bivens, which creates federal question jurisdiction.  See FAC ¶1.  Plaintiffs argue

23   that 8 U.S.C. §1252(b)(9) does not apply to their case, because they do not " challenge the

24   Attorney General's decision to commence removal proceedings, his adjudication of a removal

25   case, or his attempt to execute a removal order."  See Plaintiffs' Opposition at page 11.  Plaintiffs

26   contend that their FAC challenges only "the decision of the Department of Homeland Security to

27

28                                             11

1   revoke the approved I-130 petition submitted by Plaintiff Nora for Plaintiff Nageeb, and the acts

2   of DHS officers and employees effectuating the revocation." See Plaintiffs' Opposition at page

3   11.

4        For purposes of this motion to dismiss, the court assumes without deciding that 8 U.S.C.

5   §1252 does not strip this court of jurisdiction.   The court can presume jurisdiction because

6   several circuits have recognized that in certain circumstances, I-130 petitions are reviewable in a

7   district court.   See Ruiz v. Mukasey, 552 F.3d 269 (2d Cir. 2009); Ayanbadejo v. Chertoff, 517

8   F.3d 273 (5th Cir. 2008); Sabhari v. Reno, 197 F.3d 938 (8th Cir. 1999).

9        2.     Bivens Claim

10       Plaintiffs are seeking a judgment for damages against Individual Capacity Defendants,

11   pursuant to Bivens.   Bivens recognizes a private right of action against federal officials in their

12   individual capacity for violating a plaintiff's constitutional rights.   Therefore, Plaintiffs must

13   allege a prima facie violation under the Constitution by the Individual Capacity Defendants in

14   order to state a valid Bivens claim.   Defendants argue there is no constitutional violation.

15       Under the FAC, Plaintiffs appear to base their Bivens claim exclusively on the alleged

16   denial of their substantive due process rights under the Fifth Amendment (See Plaintiffs' FAC

17   ¶¶118-119), equal protection of the law rights under the Fifth Amendment (See Plaintiffs' FAC

18   ¶120), and freedom of expression rights under the First Amendment (See Plaintiffs' FAC ¶¶91

19   and 94).   Plaintiffs, however, have abandoned their equal protection, substantive due process, and

20   freedom of expression claims.   See Plaintiffs' Opposition at pages 30-31.   Plaintiffs now claim

21   that their "[F]ourth Amended Complaint alleges a single constitutional violation, namely that

22   Plaintiffs were denied their rights to due process of law when the approval of Nora's I-130 was

23   revoked on a pretextual basis by defendants..."   See Plaintiffs' Opposition at page 31.   Plaintiffs

24   also assert that they were denied "[d]ue process right to a fair hearing before an unbiased arbiter."

25   See Plaintiffs' Opposition at page 31.   Plaintiffs further contend:

26        "[A] hearing where an immigration judge cannot be said to have fairly considered
          the evidence presented by the petitioners is one where those petitioners have been
27

28                                              12

deprived of due process.  <u>Ahmed v. Gonzalez</u>, 398 F.3d 722, 725 (6th Cir. 2005).
That is what Plaintiffs allege here: that far from fairly considering the evidence,
the Defendants ignored the evidence to achieve a predetermined result.  That is a
violation of Plaintiffs' clearly- and long-established right to due process."

<u>See</u> Plaintiffs' Opposition at page 32.

In light of the above portions of Plaintiffs' opposition, it appears that Plaintiffs are now

alleging a procedural due process violation.  The Court has carefully reviewed Plaintiffs' fifty-six

page FAC, and is unable to find a clear allegation that Individual Capacity Defendants violated

Plaintiffs' procedural due process rights.  Plaintiffs have not properly pled a procedural due

process claim in the FAC.  As discussed above, the FAC alleges claims under substantive due

process, equal protection, and freedom of expression.  Therefore, Plaintiffs may not save their

complaint and oppose Individual Capacity Defendants' motion to dismiss by alleging new

constitutional violations in their opposition brief.  <u>See</u> <u>Broam v. Bogan</u>, 320 F.3d 1023, 1026,

n.2. (9th Cir. 2003).  "In determining the propriety of a Rule 12(b)(6) dismissal, a court may not

look beyond the complaint, such as a memorandum in opposition to a defendant's motion to

dismiss." <u>Id.</u> (quoting <u>Schneider v. Cal. Dep't of Corr.</u>, 151 F.3d 1194, 1197 n.1. (9th Cir.

1998)).  "Facts raised for the first time in plaintiff's opposition papers should be considered by

the court in determining whether to grant leave to amend or to dismiss the complaint with or

without prejudice." <u>Id.</u> (quoting <u>Orion Tire Corp. v. Goodyear Tire & Rubber Co.</u>, 268 F.3d

1133, 1137-38 (9th Cir. 2001).

Accordingly, Plaintiffs' ninth claim for relief is dismissed because their opposition does

not defend the constitutional theories that are actually pled in the FAC.  The court will examine

Plaintiffs' new allegations only for purposes of determining whether they are entitled to leave to

amend.  <u>Gompper</u>, 298 F.3d at 898.

In order for leave to amend to be granted, the court must find that Plaintiffs could state

other facts, which could plausibly give rise to a cognizable procedural due process claim against

Individual Capacity Defendants.  <u>See</u> <u>Iqbal</u>, 129 S.Ct. at 1949; <u>Twombly</u>, 550 U.S. at 570.

Although Plaintiffs' opposition is somewhat confusing with respect to the grounds for the

13

alleged procedural due process violations, it appears that they are asserting two instances in which they were denied due process.  First, Plaintiffs argue that their due process rights were violated when Nora's I-130 petition was revoked for pretextual reasons by "defendants," who knew that Nageeb was entitled to immediate relative status, and because DHS did not want Nageeb to obtain permanent resident status.  See Plaintiffs' Opposition at page 31.  Second, Plaintiffs argue their rights were violated because they did not have "a fair hearing before an unbiased arbiter."  Id.  Both arguments are without merit.

        a.     Pre-Textual Revocation of I-130

Individual Capacity Defendants argue that Plaintiffs cannot maintain a Bivens action against Defendants because Plaintiffs cannot demonstrate that Defendants violated a clearly established constitutional right, namely procedural due process.  After reviewing Plaintiffs' FAC and Opposition, the Court does not believe that Plaintiffs can state a viable procedural due process claim for two reasons.  First, Plaintiffs have not clearly asserted a constitutionally protected liberty or property interest.  In order to state a claim for a procedural due process violation, Plaintiffs must allege that they have a constitutionally protected property or liberty interest.  Mathews v. Eldridge, 424 U.S. 319, 332-33, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).  Plaintiffs must assert a "legitimate claim of entitlement to [the benefit]" rather than "an abstract need or desire for it. He must have more than a unilateral expectation of it."  Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.E.d.2d 548 (1972).

Plaintiffs merely allege that their procedural due process rights were violated because Nora's I-130 petition was revoked based on pretextual reasons.  See Plaintiffs' Opposition at page 31.  Plaintiffs' allegations are insufficient because they presuppose a constitutionally protected liberty interest.  Because Plaintiffs have not clearly established the existence of a protected liberty interest, the court is left to guess as to what liberty interest is at issue.  Therefore, to the extent that Plaintiffs are alleging that they have a right to have their alien spouse remain in the United States, the Constitution does not recognize that right.  Almario v. Attorney

1  General, 872 F.2d 147, 151 (6th Cir. 1989); Burrafato v. U.S. Dept. of State, 523 F.2d 554, 555

2  (2d Cir.1975).

3         Second, assuming a liberty interest existed or was properly alleged, Plaintiffs fail to

4  adequately show how the core requirements of due process – notice and a meaningful

5  opportunity to be heard – were violated.  "Constitutional due process requires that a party

6  affected by government action be given 'the opportunity to be heard at a meaningful time and in

7  a meaningful manner.'"  California ex rel. Lockyer v. F.E.R.C., 329 F.3d 700, 708, n.6 (9th Cir.

8  2003) (quoting Matthews, 424 U.S. at 333).  Plaintiffs do not sufficiently allege that the

9  Individual Capacity Defendants deprived them of notice or an opportunity to be heard.

10  Individual Capacity Defendants argue that "Plaintiffs were afforded procedural due process

11  protections under the Fifth Amendment" and that Plaintiffs "are just dissatisfied with the result

12  of that process."  See Individual Capacity Defendants Reply Brief at page 13.

13         Based on the FAC and Opposition, it appears that Plaintiffs were afforded the following

14  due process protections: (1) Plaintiffs received a Notice of Intent to revoke Nora's I-130 from the

15  USCIS; (2) Plaintiffs were given an opportunity to respond to the Notice of Intent, to which

16  Plaintiffs took advantage of and filed a response, and included documentation regarding

17  Nageeb's divorce from his first wife; (3) Plaintiffs received a Notice of Revocation from the

18  USCIS based on a finding of the insufficiency of evidence of the validity of Nageeb's divorce in

19  Yemen; (4) Plaintiffs had the right to appeal the I-130 revocation to the BIA; and (5) Plaintiffs

20  had the opportunity to file a new I-130 petition.  Here, Plaintiffs do not allege a clearly

21  established right to a process that was more comprehensive than that provided to them.[4]

22         Based on the FAC and Opposition, it is evident that Plaintiffs were afforded due process

23  protections, including notice and an opportunity to be heard.  In fact, Plaintiffs took advantage of

24  the protections and exercised their right to file a response to the Notice of Intent.  While

25  Plaintiffs may disagree with the result of their response, mere dissatisfaction alone with an

26  _____

27         [4]Nor have the Plaintiffs cited cases establishing such a right.

28                                              15

1    agency decision does not form the basis of a due process violation.  Plaintiffs, however,

2    voluntarily chose not to take advantage of the full scope of available administrative remedies.

3    For example, Plaintiffs acknowledged that DHS and USCIS informed Nora that she had the right

4    to appeal the I-130 revocation to the BIA.  See FAC ¶¶ 95-97.  Plaintiffs voluntarily chose not to

5    appeal the I-130 revocation.  Additionally, Plaintiffs conceded that they could have filed a new I-

6    130 petition, but declined to do so.  See FAC ¶¶ 96-97.  Plaintiffs effectively abandoned the

7    process.  It is insufficient for Plaintiffs to allege that they were denied due process protections,

8    when a process was in place, but simply not utilized.  Narumanchi v. Bd. of Trs. of Conn. State

9    Univ., 850 F.2d 70, 72 (2d Cir. 1988); Carone v. Mascolo, 573 F.Supp. 2d 575, 593-594 (D.

10   Conn. 2008).

11          Plaintiffs may not save their claim by alleging that they did not avail themselves of the

12   due process that was afforded to them because they believed that DHS and USCIS would not act

13   in a timely fashion and adjudicate or find a pretext for denying the I-130 petition.  See FAC ¶97.

14   This argument is not persuasive because Plaintiffs are not alleging that they were actually denied

15   due process but rather that they *would have been* deprived of constitutionally adequate processes

16   if they had filed a new I-130 petition or appealed the I-130 revocation.  These speculative

17   allegations against the Individual Capacity Defendants do not rise to the level of a current due

18   process violation.  Further, to the extent the Plaintiffs are asserting that an appeal would have

19   been futile, this assertion is unsupported.  If Plaintiffs had chosen to appeal the I-130 revocation,

20   the appeal would have been reviewed by the BIA, which appears to be a separate entity from the

21   Individual Capacity Defendants.[5]  Therefore, there is no indication that an appeal would have

22   been futile.

23          Because Plaintiffs were afforded due process protections but voluntarily declined to take

24

25          [5]Individual Capacity Defendant Chertoff was the former Secretary for the DHS, Scharfen
26   was the former Acting Director of the USCIS, Curda is the USCIS District Director for the
     Sacramento and Fresno Field Offices, Riding is the USCIS's Fresno Field Office Director, and
27   LeFevre is the ICE San Francisco District Office Chief Legal Counsel.

28                                                    16

1  advantage of the full process, the court does not see a procedural due process violation.

2  Accordingly, Plaintiffs have not established that the Individual Capacity Defendants deprived

3  Plaintiffs of due process protections.

4          b.    <u>Unbiased Arbiter</u>

5          Plaintiffs' claim that they did not have "a fair hearing before an unbiased arbiter" does

6  not state a due process claim against the Individual Capacity Defendants.  Plaintiffs contend that

7  "a neutral judge is one of the most basic due process protections" and that "[a] hearing where an

8  immigration judge cannot be said to have fairly considered the evidence presented by the

9  petitioners is one where those petitioners have been deprived of due process."  These contentions

10  are confusing because none of the Individual Capacity Defendants are immigration judges.[6]

11  Again, the court is left guessing as to what this claim is really about.

12          To the extent, that Plaintiffs are alleging that Judge Webber was not a neutral judge in the

13  I-485 immigration proceeding, this allegation is insufficient against the Individual Capacity

14  Defendants because it does not establish that they interfered with Plaintiffs' right to a neutral

15  judge.  Moreover, Plaintiffs do not allege that the Individual Capacity Defendants were

16  responsible for Judge Webber's judicial decision to pretermit the I-485 petition.  Further,

17  Plaintiffs' claim fails because they are not contesting the actual immigration proceeding before

18  the immigration judge, but rather only challenging the non-judicial decisions "[o]f the

19  Department of Homeland Security to revoke the approved I-130 petition submitted by Plaintiff

20  Nora for Plaintiff Nageeb, and the acts of DHS officers and employees effectuating the

21  revocation."  <u>See</u> Plaintiffs' Opposition at page 11.

22          In addition, to the extent that Plaintiffs are trying to argue that the Individual Capacity

23  Defendants did not act as neutral arbiters, Plaintiffs' claim is baseless as they did not appear in

24  any hearing or proceeding before the Individual Capacity Defendants.  Plaintiff do not allege that

25  

26          [6]The court notes that in the Third-Amended Complaint, Plaintiffs named Judge Webber
as an Individual Capacity Defendant.  However, in the FAC, Plaintiffs omit Judge Webber as an

27  Individual Capacity Defendant.

28                                              17

these Individual Capacity Defendants were personally involved in the immigration proceedings against Nageeb that Plaintiffs claim violated their constitutional rights.

      c.      Limitations of Bivens Action

Lastly, even assuming a procedural due process violation was properly alleged, the Supreme Court has "consistently refused to extend Bivens liability to any new context or new category of defendants." Correctional Services Corp. v. Malesko, 534 U.S. 61, 68 (2001). Bivens and its progeny have shown that federal courts do not have the unbridled authority to grant a damages remedy any time a plaintiff can show a violation of the Constitution by a federal officer. Id. A damages remedy "is not an automatic entitlement... and in most instances we have found a Bivens remedy unjustified." Wilkie v. Robbins, 127 S.Ct. 2588, 2597 (2007).

The few cases Plaintiffs cite for the proposition that a Bivens claim was not precluded in an immigration context are limited to the unique facts of each case, and are easily distinguishable from the facts of this case. See Castaneda v. United States, 546 F.3d 682 (9th Cir. 2008) (immigration detainee died as a direct result of defendant doctors' failure to diagnose and treat cancer); Papa v. United States, 281 F.3d 1004 (9th Cir. 2002) (alien killed by another alien while detained was a direct result of defendant-guards who knowingly placed him in exercise yard with known gang member with a criminal record); Arevalo v. Woods, 811 F.2d 487 (9th Cir. 1987) (U.S. citizen assaulted by INS officer while temporarily and unreasonably detained). Unlike Plaintiffs' case, the defendants in the above listed actions had direct, personal contact with the plaintiff and the plaintiffs were either arrested, detained/and or physically harmed. More importantly, none of the defendants in the cases cited by Plaintiffs challenged an I-130 petition or an immigration decision.

Accordingly, this court will not recognize a Bivens remedy against the Individual Capacity Defendants beyond the present scope of the current caselaw.

3.      Dismissal of Claim Without Leave to Amend

Although Plaintiffs request that they be allowed to further amend their complaint, this request is denied. The Court finds that Plaintiffs fail to state a cognizable Bivens claim against

Individual Capacity Defendants.  Having broadly construed and assumed the truth of the allegations, the Court is persuaded that there is no basis for concluding that Plaintiffs' claims can be saved through amendment of the complaint.  See Neitzke v. Williams, 490 U.S. 319, 327 (1989) (a court may exercise its discretion and deny leave to amend when it is clear that the plaintiff cannot allege any set of facts that would entitle him or her to relief); Lopez, 203 F.3d at 1129 ("Courts are not required to grant leave to amend if a complaint lacks merit entirely.").

Here, Plaintiffs have failed to make allegations that "are enough to raise a right to relief above the speculative level" or that are sufficient to show a "plausible entitlement" to recovery under a viable legal theory.  Twombly, 127 S.Ct. at 1965 & 1967.  The Court finds that Plaintiffs could not possibly cure the deficiencies by the allegation of other facts that would support a deprivation of a right secured by the Constitution.  Lopez, 203 F.3d at 1127.

Additionally, Plaintiffs have already amended their complaint once as of right and two additional times without leave of court.  The Court gave Plaintiffs an opportunity to amend a fourth time after the Court dismissed the third complaint.  Plaintiffs, however, were forewarned that the Court would not be inclined to grant leave to amend a fifth time absent a good reason. Plaintiffs seek leave to amend on the grounds that arguably a new pleading standard under Iqbal, has been imposed by the Supreme Court since the filing of the FAC.  See Plaintiffs' Opposition at page 10.  The court is not convinced by this argument given that the Court does not grant Defendants' motion to dismiss based on Iqbal's pleading standard.  Rather, the Court dismisses Plaintiffs' FAC because Plaintiffs are not able to state a cognizable Bivens claim for relief and any amendment would be futile under the governing law.

Accordingly, Plaintiffs' ninth claim for relief is dismissed without leave to amend. Additionally, because the Court grants the Individual Capacity Defendants' motion under Rule 12(b)(6), the court declines to address their 12(b)(1) or 12(b)(2) arguments.

B.    Claims against Official Capacity Defendants

Official Capacity Defendants seek to have Plaintiffs' third through eighth claims for relief dismissed for lack of subject matter jurisdiction.  Official Capacity Defendants argue that this

1  court should dismiss Plaintiffs' writ of mandamus and writ of prohibition claims because the

2  FAC does not and cannot specify a non-discretionary duty owed to Plaintiffs that Official

3  Capacity Defendants failed to perform.[7]

4  Jurisdiction over Petitions for Writ of Mandamus and Prohibition

5  Plaintiffs contend this court has subject matter jurisdiction over the FAC's third through

6  eighth mandamus claims for relief pursuant to the Mandamus Act, 28 U.S.C. §1361.  Plaintiffs'

7  Opposition at page 5.[8]  The court disagrees as it has already ruled that the court lacks jurisdiction

8  pursuant to the Mandamus Act.  See Court's Order Dated March 26, 2009 (Doc. No. 58) at page

9  10.  The Mandamus Act vests a district court with original jurisdiction over "any action in the

10  nature of mandamus to compel an officer or employee of the United States or any agency thereof

11  to perform a duty owed to the plaintiff."  28 U.S.C. § 1361.  This court held that "Plaintiffs have

12  not specified a nondiscretionary duty owed to the Plaintiffs that Defendants failed to perform."

13  Id.  As discussed in the Court's March 26, 2009 order, it is clear that the Official Capacity

14  Defendants had a non-discretionary duty to act and process Nora's I-130 application.  Razaq v.

15  Poulos, No. 06-2461-WDB, 2007 WL 61884, at *3 (N.D. Cal. January 8, 2007) (finding that

16

17  [7]Official Capacity Defendants also argue that the court lacks jurisdiction to review the
    denial of the I-485 application because review of such determination relating to his removal
18  proceedings and final order of removal is with the Court of Appeals pursuant to 8 U.S.C. §1252
    (a)(2)(B)(5).  The court, however, will not address this argument since the Plaintiffs are only
19  challenging the revocation of the I-130 petition.

20  [8]The court notes that while Plaintiffs' FAC raises a writ of prohibition claim, the Official
    Capacity Defendants moved to dismiss Plaintiffs' writ of mandamus and writ of prohibition
21  claims three through eight based on lack of subject matter jurisdiction.  See Official Capacity
    Defendants' Motion to Dismiss Brief at page 4.  The Official Capacity Defendants' arguments
22  rely solely on the Court's previous discussion of the dismissal of Plaintiffs' writ of mandamus
    claims.  In opposition, Plaintiffs assert that causes of action three through eight "arise under the
23  Mandamus Act, 28 U.S.C. §1361."  See Plaintiffs' Opposition at page 5.  Therefore, it appears to
    the court that both parties are utilizing the same standards for both the writ of mandamus and the
24  writ of prohibition.  In light of the motion and opposition, the Court assumes that the same
    jurisdictional standards apply.  Furthermore, it has been held that the writ of prohibition is "the
25  fraternal twin of its more familiar sibling, the writ of mandamus" and "[t]he two are evaluated
    under an identical standard."  Calderon v. U.S. Dist. Ct., 134 F.3d 981, 983, n.3 (9th Cir. 1998);
26  See also  In re Rice, 2008 U.S. App. LEXIS 27447 (10th Cir. April 2, 2008); In re McCarthy, 368
    F.3d 1266, 1268 (10th Cir. 2004).  Thus, the court will not separately address the Plaintiffs' writ
27  of prohibition claims.

28  20

1  USCIS has a mandatory duty to decide whether to grant or deny an I-130 application and is not

2  authorized to make no decision).  Unlike Razaq, the Official Capacity Defendants have acted and

3  made a decision on Plaintiffs' I-130 visa application.  While Plaintiffs may disagree with the

4  outcome of the Official Capacity Defendants' revocation decision, the fact remains that Official

5  Capacity Defendants have made a decision regarding the visa application.  Rather than merely

6  asking the court to order the Official Capacity Defendants to make a decision regarding the I-130

7  petition,  Plaintiffs are essentially asking the court to overturn the substance of the revocation

8  decision. Plaintiffs have not cited any new binding authority that would entitle them to

9  mandamus relief under the facts of this case.[9]

10      Because Plaintiffs have not specified a non-discretionary duty owed to Plaintiffs that

11  Official Capacity Defendants failed to perform, this court lacks jurisdiction pursuant to the

12  Mandamus Act.  Accordingly, the Official Capacity Defendants' motions to dismiss Plaintiffs'

13  third through eighth claims for relief are granted without leave to amend.  As discussed above,

14  this is the second time the court has dismissed this claim for lack of subject matter jurisdiction.

15  Because Plaintiffs have failed to identify a non-discretionary duty that the Official Capacity

16  Defendants have failed to perform, the court does not think that another bite at the apple would

17  lead to a different result.  Based on the FAC and Opposition, the court determines that the

18  pleading could not possibly be cured by the allegations of other facts.  Bly-Magee v. California,

19  236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); Chang v. Chen, 90 F.3d

20  1293, 1296 (9th Cir. 1996).  Additionally, because the court grants Official Capacity Defendants'

21

22  ⁹Plaintiffs argue that other courts have recognized the existence of jurisdiction under the Mandamus Act in similar circumstances.  Plaintiffs' reliance on Lockhart v. Chertoff, 2008 WL 80225 (N.D. Ohio January 7, 2008) and Robinson v. Chertoff, No. 06-5702 (SRC) 2007 WL 1412284 (D.N.J. May 14, 2007) are unavailing.  Lockhart is not helpful because it appears that the court held that it had federal question jurisdiction based on 8 U.S.C. §1151(b)(2)(A)(i) and not the Mandamus Act.  In addition, the Lockhart Court held that the issue before the court was not whether the I-130 petition should have been, or should be, granted. The Lockhart Court only found it had jurisdiction to determine, as a matter of law, the meaning of "spouse" and "immediate relative" status under 8 U.S.C. §1151(b)(2)(A)(i).  Here, that determination of law is not at issue.  Robinson is not persuasive because there the court held that it had subject matter jurisdiction under 28 U.S.C. §1331 and the APA, but did not address whether it had jurisdiction pursuant to the Mandamus Act.

23

24

25

26

27

28

motion for lack of subject matter jurisdiction under Rule 12(b)(1), the court declines to address their 12(b)(6) argument.

### <u>ORDER</u>

For the reasons discussed above, the court orders that:

1.   Official Capacity Defendants' motion to dismiss Plaintiffs' third through eighth claims against them is GRANTED without leave to amend;

2.   Individual Capacity Defendants' motion to dismiss Plaintiffs' ninth claim against them is GRANTED without leave to amend; and

3.   Plaintiffs' first and second claims for relief against the Official Capacity Defendants pursuant to the APA are not affected by this order.

IT IS SO ORDERED.

**Dated:   March 29, 2010**                    **/s/ Anthony W. Ishii**
CHIEF UNITED STATES DISTRICT JUDGE